***********
At the oral arguments before the Full Commission, plaintiff renewed his motion to reinstate benefits and submitted an affidavit dated November 15, 2004. Defendants filed a response in opposition to the motion.
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and of the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The date of injury by accident is August 31, 1999.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and there was an employer/employee relationship between the parties, with defendant-employer being insured by Southern Guaranty Insurance Company.
5. Plaintiff's average weekly wage was $653.10.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the Deputy Commissioner hearing, plaintiff was 53 years old and has a sixth grade education.
2. Plaintiff suffered a compensable injury by accident on August 31, 1999. Dr. Michael Gwinn determined that plaintiff reached maximum medical improvement on July 26, 2000. Defendants have attempted to locate suitable employment for plaintiff since that time, but plaintiff has been marginally cooperative with vocational rehabilitation efforts.
3. On November 22, 2000, plaintiff was ordered to cooperate with vocational rehabilitation by Executive Secretary Tracey Weaver. On May 20, 2002, defendants filed a Form 24 to suspend payment of compensation to plaintiff. That request was allowed and plaintiff's temporary total disability compensation benefits were suspended on August 16, 2002, retroactive to May 21, 2002, resulting in an overpayment of 13 weeks. Benefits resumed in November 2002 based upon plaintiff's alleged intent to cooperate.
4. On April 1, 2003, defendants again requested that plaintiff's benefits be terminated because of his unjustified refusal to comply with vocation rehabilitation services. On June 19, 2003, Executive Secretary Weaver filed another Order requiring plaintiff to comply with vocational rehabilitation pursuant to N.C. Gen. Stat. § 97-25.
5. On October 8, 2003, defendants again filed a Form 24 seeking to terminate plaintiff's compensation. The Executive Secretary's Office was unable to make a determination on the Form 24 application and referred the matter to the Deputy Commissioner Section for an evidentiary hearing. In the interim, defendants have continued to provide vocational rehabilitation counseling in an effort to locate suitable employment for plaintiff.
6. In October 2002, Ashley Harrelson, vocational rehabilitation consultant and certified rehabilitation counselor, began working with plaintiff. As part of the job search, plaintiff was asked by Ms. Harrelson to follow up on three to four jobs weekly, including some in-person visits with employers. Plaintiff failed to make the required contacts. The pattern of non-cooperation continued, and in January 2003, Ms. Harrelson identified a specific job at York Security. The job had been approved by Dr. Gwinn, but plaintiff indicated that he was "not interested" in the position. Plaintiff made no effort to secure the position, indicating that he could only work first shift. Plaintiff gave no reason why he could only work first shift.
7. In March 2003, plaintiff insisted that he could not work outside. Plaintiff did not have any restrictions that prevented him from working outside and Dr. Gwinn never stated that plaintiff was not able to work outside. In April 2003, plaintiff told Ms. Harrelson that he could not think of any job that he would be interested in performing and that he was able to do. Plaintiff has not initiated any job search efforts independently, maintaining his position that he does not know of any occupations that he would be interested in or that he would like to pursue.
8. In May 2003, plaintiff still had not submitted job search logs as required, because he had not completed any job applications.
9. Ms. Harrelson suggested that plaintiff enroll in GED classes, but plaintiff was resistant. Ms. Harrelson encouraged plaintiff to attend classes and advised him that it would increase his ability to find a job that he may enjoy. Plaintiff enrolled in the classes in June 2003 and from the very beginning contended that he had problems sitting through the class. Ms. Harrelson addressed with Dr. Gwinn plaintiff's alleged inability to sit through the class because of back pain and Dr. Gwinn indicated that plaintiff was physically able to sit through the class, as there was no contraindication to him doing so. Plaintiff also testified that the teacher told him it would be acceptable for him to get up and take breaks if he was not able to sit through the whole class period.
10. In August 2003, Karen Davis assumed the role of plaintiff's vocational case manager. Since Ms. Davis began working with plaintiff, plaintiff has continued to have difficulty following up on job leads and not making in-person employer contacts. From the time that Ms. Davis began working with plaintiff in August 2003 through the date of her deposition on February 20, 2004, plaintiff made one in-person contact, despite Ms. Davis' advice to plaintiff that he needed to make at least one direct contact with an employer weekly. However, Ms. Davis has never met with plaintiff and her only contact with him has been by telephone. It would be beneficial to both sides if the parties strive to improve their lines of communication and if the vocational rehabilitation professional has more personal contact and involvement in plaintiff's vocational efforts.
11. Plaintiff has continued to see Dr. Gwinn on a rather sporadic basis and has recently complained of pain extending into his hands and feet, and also in his neck and low back. Dr. Gwinn could not explain the pain in plaintiff's hands and could not relate plaintiff's complaints of neck pain and low back pain to his workers' compensation injury. No surgery has been recommended for plaintiff.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On August 31, 1999 plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to comply with vocational rehabilitation pursuant to N.C. Gen. Stat. § 97-25 despite being ordered to do so by the Executive Secretary's orders dated November 22, 2000 and June 19, 2003, in which the Executive Secretary warned plaintiff that his failure to cooperate with vocational rehabilitation could result in suspension of benefits. Defendant is entitled to suspend plaintiff's compensation benefits until plaintiff's refusal to fully cooperate with vocational rehabilitation ceases. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendants may suspend plaintiff's temporary total disability compensation as of May 26, 2004, the date of the Deputy Commission Opinion and Award. Given the particular circumstances in this case, plaintiff's weekly compensation is suspended until such time as he demonstrates actual compliance with reasonable vocational rehabilitation.
2. Both parties should work to improve the lines of communication. The rehabilitation professional shall communicate with plaintiff's treating physician in order to further assist the rehabilitation efforts.
3. Each side shall pay their own costs.
This the 6th day of December 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/mlb